**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**July 21, 2020**

# In the Court of Appeals of Georgia

A20A1376. RILEY v. THE STATE.

PER CURIAM.

A jury found Pierre Riley guilty of possession of tools for the commission of a crime, failure to maintain lane, and two counts of forgery of a financial transaction card. Riley appeals from the denial of his motion for a new trial, contending that: (i) the trial court erred when it denied his motion in limine to exclude certain evidence; (ii) the trial court improperly allowed the jury to view a video recording during deliberations; (iii) the State referred to facts not in evidence during closing argument; and (iv) the evidence was insufficient to support three of his convictions. Finding no error, we affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys a presumption of

innocence. *Krauss v. State*, 263 Ga. App. 488, 488 (1) (588 SE2d 239) (2003). So viewed, the evidence shows that, in January 2018, a sheriff's corporal pulled over a car driven by Riley, in which Antwon Watson was a passenger, after seeing the car weave across the road and fail to maintain its lane. Riley provided his driver's license, but Watson told the officer that he had no identification on him. Although the officer saw several debit cards in Watson's open wallet, Watson claimed that the cards did not have his name on them and quickly closed the wallet. The officer asked Watson for his name and date of birth; the information he provided "did not come back on file." Consequently, the officer attempted to ascertain Watson's identity with a portable fingerprint reader. During that time, Watson allowed the officer to examine his wallet, which no longer contained any debit cards.

After several attempts, the officer obtained a readable fingerprint from Watson, which revealed that the prior information he gave the officer was false. Around that time, a K-9 unit alerted to the presence of drugs in the car. During the ensuing search, officers found: (i) three or four debit cards in Watson's name in a driver's door pocket; (ii) another eleven debit cards, also in Watson's name, hidden under the cover for the car's fuse panel, which was in the driver's door jamb; (iii) a laptop computer and credit card reader/writer together in a bag in the back seat; and (iv) Watson's

2

passport and small particles of marijuana in or near the area between the driver's seat and center console.[1] An officer testified that the reader/writer found with the laptop has the capability to reprogram the magnetic strips on several types of transaction cards. Moreover, the magnetic strips on the debit cards found in Riley's car had been altered, so that the magnetic data did not match the information embossed on the front of each card. Riley told officers that the laptop and bag belonged to him and that the cards hidden under the fuse panel cover had been there for a few days.

Officers also found, on the passenger side floorboard, ten prepaid $100 gift cards and receipts showing that the gift cards had been purchased with Visa cards in Athens approximately thirty minutes before the traffic stop. Most, if not all, of the altered debit cards found in Riley's car were Visa cards. And Riley told an officer during the traffic stop that he and Watson were coming from Athens.

Riley testified in his own defense, denying any knowledge of the debit card alterations. He testified that the laptop computer and cards found in his car belonged to Watson, that he mistakenly told an officer that the computer was his, and that he occasionally let Watson borrow his car.

---

[1] Riley was not charged for the marijuana found in his car.

The jury found Riley guilty of one count each of possession of tools for the commission of a crime and failure to maintain lane, and two counts of forgery of a financial transaction card. The trial court denied Riley's motion for a new trial, and this appeal followed.

1. Six days before his trial began – and more than nine months after he waived arraignment – Riley filed a motion in limine, seeking to bar the State from referring to or attempting to introduce at trial "[a]ny reference to" the items found in his car and his statements to officers, on the ground that the search that produced the evidence was unconstitutional. Riley contends on appeal that the trial court erred in denying the motion. We disagree.

In his appellate brief, Riley mischaracterizes his motion in limine by asserting that it sought to bar the introduction of the physical items found in his car. The motion did not seek to suppress those items; it rather sought to bar any argument or testimony regarding those items (and his ensuing statements to officers). See *Walker v. State*, 277 Ga. App. 485, 488 (3) (627 SE2d 54) (2006) (a motion to suppress under OCGA § 17-5-30 "applies only to suppression of *tangible physical* evidence," whereas "a pretrial motion in limine may be employed to seek a ruling on the admissibility of the *testimonial* evidence") (emphases supplied); see also generally

4

*Copeland v. State*, 272 Ga. 816, 818 (2) (537 SE2d 78) (2000) ("Motions in limine do not replace motions to suppress or other specific kinds of pre-trial hearings in criminal cases.") (punctuation omitted)*; Fraser v. State*, 283 Ga. App. 477, 480 (2) (642 SE2d 129) (2007) ("A defendant may not circumvent the requirement of a timely, written motion to suppress by couching his motion as a motion in limine."), overruled in part on other grounds by *State v. Lane*, __ Ga. __, __ (1), __ (appendix) (838 SE2d 808, 815, 819) (2020).

Importantly, Riley did not file a timely motion to suppress any physical evidence in this case.[2] As a result, he "waived any right to claim that the underlying search which produced the physical evidence was unconstitutional," and he therefore

---

[2] The deadline to file a motion to suppress expired months before Riley filed his motion in limine. Under OCGA § 17-7-110 and Uniform Superior Court Rule 31.1,

> a motion to suppress must be filed within ten days of the date of arraignment unless the trial court extends the time for filing the motion. . . . Failing to file a timely motion to suppress amounts to a waiver of even constitutional challenges. . . . And where, as here, the defendant waives arraignment, the ten-day period in which the defendant must file pretrial motions begins on the date that the waiver of arraignment is filed.

*Gonzalez v. State*, 334 Ga. App. 706, 708 (1) (780 SE2d 383) (2015) (punctuation omitted). Riley waived arraignment on April 24, 2018, and filed his motion in limine on January 30, 2019.

"was not entitled to exclusion of testimony describing the physical evidence on the basis that the testimony was the fruit of an unconstitutional search." See *Walker*, 277 Ga. App. at 489 (3); see also *Fraser*, 283 Ga. App. at 480 (2) (by failing to file a timely motion to suppress, the defendant "failed to preserve his right to challenge the validity of the search, and he cannot circumvent the requirements [for filing a proper motion to suppress] by couching his motion as a motion in limine"). Moreover, in his motion in limine, Riley's sole challenge to the admissibility of his statements to officers was that those statements resulted from the allegedly unconstitutional search of his car. Thus, by waiving any claim that the search of his car was illegal, he necessarily waived any claim that his statements to officers should be suppressed due to the alleged illegality of the search. See generally *Fraser*, 283 Ga. App. at 480 (2); *Walker*, 277 Ga. App. at 489 (3). Consequently, the trial court did not err when it denied Riley's motion in limine.

2. At trial, the court admitted audiovisual recordings of the traffic stop, parts of which were played for the jury. At the jury's request, the trial court played part of one of the recordings for the jury again during deliberations, in open court, with the parties and trial judge present. Riley did not object at that time. He contends on

appeal that playing the recording during deliberations violated the continuing-witness rule. We disagree.

We generally review a trial court's ruling on a continuing-witness-rule objection for abuse of discretion. See *McDaniel v. McDaniel*, 288 Ga. 711, 717 (3) (a) (707 SE2d 60) (2011). Here, however, Riley did not make a contemporaneous objection. Therefore, to the extent that he has not waived appellate review of this claim, we review it only for plain error.[3] Compare *Jackson v. State*, 252 Ga. App. 16, 16-17 (2) (555 SE2d 240) (2001) ("Issues presented for the first time on appeal furnish nothing for us to review, for this is a court for correction of errors of law committed by the trial court where proper exception is taken, because one may not abandon an issue in the trial court and on appeal raise questions or issues neither raised nor ruled on by the trial court.") (punctuation omitted), with OCGA § 24-1-103 (d) (a court may take notice of "plain errors affecting substantial rights" concerning evidentiary rulings even absent a contemporaneous objection).

---

[3] Georgia's Evidence Code authorizes plain-error review of evidentiary rulings not objected to at trial. OCGA § 24-1-103. We need not decide here whether Riley's challenge to the act of replaying the recording for the jury during deliberations is barred by his failure to object or whether the act constitutes an evidentiary ruling subject to plain-error review because, as explained herein, there is no error. See *Rainwater v. State*, 300 Ga. 800, 802 (2), n. 3 (797 SE2d 889) (2017); *Collier v. State*, 288 Ga. 756, 759 (4) (707 SE2d 102) (2011).

"To establish plain error, [an a]ppellant must identify an error that was not affirmatively waived, was clear and not open to reasonable dispute, likely affected the outcome of the proceeding, and seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Thompson v. State*, 304 Ga. 146, 151 (6) (816 SE2d 646) (2018); accord *Roberts v. State*, 305 Ga. 257, 263 (4) (824 SE2d 326) (2019). Under the continuing-witness rule, "it is error to allow a jury to take written or recorded statements into the jury room during deliberations unless those statements are consistent with the defendant's theory of the case." *Ross v. State*, 344 Ga. App. 477, 479 (2) (810 SE2d 645) (2018) (punctuation omitted). The continuing-witness rule does not apply where, as here, an audiovisual recording "was replayed to the jury a single time in a controlled environment, the courtroom, with all parties and the trial judge present." *Lopez v. State*, 291 Ga. App. 210, 214 (3) (661 SE2d 618) (2008) (punctuation omitted); accord *Clark v. State*, 296 Ga. 543, 548-549 (4) (769 SE2d 376) (2015) (the continuing-witness rule "has no application to the replaying of recorded statements during the examination of witnesses, during closing arguments, or in the courtroom at the jury's request during deliberations"). Consequently, the trial court did not err, plainly or otherwise.

3. During closing arguments, the State briefly began to discuss a part of the recording of the traffic stop that was not played for the jury. In particular, the prosecutor stated, "I don't think you actually got to hear it on the video because we didn't play all of it for you guys. But there is a time in there that actually [a deputy] says, you're going to drive around . . . ," at which point Riley objected "to facts not in evidence." The trial court sustained the objection, and the State continued its argument without further referring to the recording. Riley contends that the trial court erred by failing to rebuke the State and give the jury a cautionary instruction. We discern no reversible error.

We review a trial court's rulings on allegedly improper argument for abuse of discretion. See *Woodham v. State*, 263 Ga. 580, 580 (1) (a) (439 SE2d 471) (1993). "Courts give attorneys wide latitude during closing arguments to draw deductions from the evidence, but discussing facts not in evidence is forbidden." *Billups v. State*, 234 Ga. App. 824, 828 (2) (507 SE2d 837) (1998); see also OCGA § 17-8-75. "Under OCGA § 17-8-75, when counsel makes a statement of a prejudicial matter which is not in evidence, the court must interpose and prevent such statement, and, on objection, shall rebuke counsel and provide curative instructions to the jury." *Woodham*, 263 Ga. at 580 (1) (a); accord *Billups*, 234 Ga. App. at 829 (2).

9

However, "[a] mere objection to alleged improper argument of counsel, without more, is not sufficient to invoke a ruling of the court . . . ." *Hinton v. State*, 233 Ga. App. 213, 214 (2) (504 SE2d 49) (1998) (punctuation omitted). Thus, "[i]f an objection is sustained, the trial court has no duty to rebuke counsel or give curative instructions unless specifically requested by the defendant." *Parker v. State*, 276 Ga. 598, 599 (3) (581 SE2d 7) (2003) (punctuation omitted); accord *Woodham*, 263 Ga. at 580 (1) (a); *Hinton*, 233 Ga. App. at 214 (2).

(a) Here, Riley did not ask the trial court to rebuke the prosecutor or to tell the jury to disregard the challenged statement. The court's failure to do so therefore is not a basis for reversal. See *Parker*, 276 Ga. at 599 (3); *Woodham*, 263 Ga. at 580 (1) (a); *Hinton*, 233 Ga. App. at 214 (2). In any event, reversal is not warranted where it is highly probable that any possible trial court error in this regard did not contribute to the verdict. See *Walker v. State*, 281 Ga. 521, 524 (5) (640 SE2d 274) (2007); *Jones v. State*, 159 Ga. App. 704, 704-705 (2) (285 SE2d 45) (1981). When viewed in context with the totality of the evidence in this case, it is highly probable that the prosecutor's largely innocuous assertion that a deputy said, "you're going to drive around . . . ," did not contribute to the verdict.

10

(b) After the trial court sustained Riley's objection to the State's reference to facts not in evidence, the prosecutor resumed her closing argument as follows: "They're driving around in Walton County with items they don't need to have, that are against the law, that are contraband[,] and they have marijuana flakes in the car. Not a smart idea. But then again, it's not smart and it's not okay to be doing what these two defendants did together." To the extent that Riley's appellate brief may be read to challenge these statements, he has waived any such claim by failing to object again in the trial court. See *Jackson*, 252 Ga. App. at 16-17 (2). Regardless, the most natural reading of these statements is that the prosecutor pivoted away from relying on facts not in evidence and instead raised an unobjectionable (if inartful) argument about the illegality of Riley's and Watson's actions. See, e.g., *Varner v. State*, 285 Ga. 300, 301 (2) (c) (676 SE2d 189) (2009) (counsel are given "wide leeway . . . to argue all reasonable inferences that may be drawn from the evidence during closing argument") (punctuation omitted). In that vein, it is highly probable that the statements – even if improper – did not contribute to the verdict. See *Jenkins v. State*, 235 Ga. App. 547, 547-548 (1) (510 SE2d 87) (1998); see also *Walker*, 281 Ga. at 524 (5); *Jones*, 159 Ga. App. at 704-705 (2). This enumeration of error thus does not warrant reversal.

11

4. Finally, Riley contends that the evidence was insufficient to support his convictions for financial transaction card fraud and possession of tools for the commission of a crime. In particular, Riley maintains that the evidence was insufficient to show that he was a party to those crimes and instead showed only that he was merely present "with his passenger's criminal activity."[4] We disagree.

> When a criminal defendant challenges the sufficiency of the evidence supporting his conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The jury, not this Court, resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from the evidence. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

*Galvan v. State*, 330 Ga. App. 589, 592 (1) (768 SE2d 773) (2015) (punctuation omitted); see also *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

As relevant here, a person commits the offense of possession of tools for the commission of a crime when "he has in his possession any . . . device commonly used

---

[4] Riley's challenge in this regard necessarily does not implicate his conviction for failure to maintain lane.

12

in the commission of [a] crime with the intent to make use thereof in the commission of a crime." OCGA § 16-7-20 (a). A person commits the offense of financial transaction card forgery when, in relevant part, "[w]ith intent to defraud a purported issuer; a person or organization providing money, goods, services, or anything else of value; or any other person, he falsely encodes . . . or alters existing encoded information on a financial transaction card." OCGA § 16-9-32 (a) (2).

"Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." OCGA § 16-2-20 (a); *Brown v. State*, 314 Ga. App. 375, 376 (724 SE2d 410) (2012). One is concerned in the commission of a crime if one "[i]ntentionally aids or abets in the commission of the crime." OCGA § 16-2-20 (b) (3); *Brown*, 314 Ga. App. at 376. "Although mere presence at the scene is not sufficient to convict one of being a party to a crime, criminal intent may be inferred from conduct before, during, and after the commission of a crime." *Winn v. State*, 345 Ga. App. 359, 362 (1) (813 SE2d 400) (2018) (punctuation omitted); accord *Brown*, 314 Ga. App. at 376 ("Presence, companionship, and conduct before and after the offense are circumstances from which an accused's participation in the criminal enterprise may be inferred.") (punctuation omitted). The question of whether one was a party to a charged crime

13

generally is for the factfinder. See *Boggs v. State*, 304 Ga. App. 698, 701 (1) (697 SE2d 843) (2010).

Here, the two financial transaction card forgery counts pertained to Visa cards with embossed numbers ending in 4205 and 5151, which were found in the driver's door pocket of Riley's car, which he was driving at the time of the stop. The magnetic strips on those cards, along with other Visa cards in the car – many of which he admitted had been in the car for several days – had been altered. Riley also admitted that he and Watson were coming from Athens, where receipts found in the car showed that Visa cards had been used that day to buy several $100 gift cards, which also were found in the car. This evidence, along with the laptop computer and bag (which Riley told officers was his) and card reader/writer found in the same bag, was sufficient for the jury to find that Riley was a participant in the two charged financial transaction card forgery counts.

Even if, as Riley appears to imply in his appellate brief, this evidence was entirely circumstantial, when viewed in its entirety, it was sufficient for the jury to reject any other *reasonable* theory except that Riley was an active participant in a scheme to defraud others by altering the cards at issue here. See *Mason v. State*, 199 Ga. App. 691, 692-693 (1) (405 SE2d 747) (1991) (although a conviction based on

circumstantial evidence is authorized only if the evidence excludes every other *reasonable* hypothesis save the defendant's guilt, it need not exclude *every* inference or hypothesis, and whether this test has been satisfied is a question for the jury) (citing former OCGA § 24-4-6, now codified at OCGA § 24-14-6); accord *Hill v. State*, 297 Ga. 675, 678 (2) (b) (777 SE2d 460) (2015).

The same body of evidence also was sufficient for the jury to find Riley guilty of possession of tools for the commission of a crime – i.e., that he possessed, either individually or jointly with Watson, a laptop and card reader/writer, which may be used to reprogram magnetic strips on transaction cards, with the intent to commit financial transaction card forgery. See OCGA §§ 16-7-20 (a); 16-9-32 (a) (2); see also generally *Kenemer v. State*, 329 Ga. App. 330, 333-334 (765 SE2d 21) (2014) (whether a tool is commonly used in the commission of a crime generally is "within the ken of the average juror," as is whether the defendant "had the necessary intent to use [the tools at issue] in that manner," based on all of the evidence presented) (punctuation omitted); accord *Norwood v. State*, 265 Ga. App. 862, 863, 864-865 (2) (595 SE2d 537) (2004) (holding that the totality of the circumstances permitted the jury to find that the defendant possessed items found in a van in which he was stopped and a truck that accompanied the van and that those items were burglary

15

tools). Because the evidence on this count was not entirely circumstantial – given that Riley admitted ownership of the laptop and bag that also contained the card reader/writer, all of which was found in his car, along with several altered debit cards and recently purchased gift cards – the circumstantial evidence doctrine does not apply to this count. See *Hill*, 297 Ga. at 678 (2) (b) (the circumstantial evidence doctrine applies only "when the State's case against the defendant was wholly circumstantial") (punctuation omitted). And while Riley disclaimed ownership of the laptop at trial, any factual discrepancy in this regard was for the jury alone to resolve. See *Browner v. State*, 296 Ga. 138, 141 (1) (765 SE2d 348) (2014) ("[r]esolving evidentiary conflicts and inconsistencies and assessing witness credibility are the province of the fact finder, not the appellate court," and the jury is not required to accept the defense presented by the defendant); *Jordan v. State*, 344 Ga. App. 267, 271 (3) (810 SE2d 158) (2018) (observing that the jury was authorized to disbelieve the defendant's testimony that he was merely present at the scene); see also *Winn*, 345 Ga. App. at 362 (1) (evidence that a defendant owns or controls premises where contraband is found gives rise to a rebuttable presumption of possession, which remains a question of fact for the jury where, as here, there is at least "slight evidence of access, power, and intention to exercise control or dominion over the contraband")

16

(punctuation omitted); *Davis v. State*, 270 Ga. App. 777, 779 (1) (607 SE2d 924) (2004) (evidence that the defendant truck owner and others in the truck had equal access to contraband in the truck showed that all involved "were parties to the crime and thus guilty of joint constructive possession" of the contraband).[5] Consequently, Riley's challenges to the sufficiency of the evidence fail.

For each of the above reasons, we affirm the judgment of the trial court.

*Judgment affirmed. Division Per Curiam. All Judges concur.*

---

[5] The trial court gave comprehensive jury instructions at the end of Riley's trial that included charges on circumstantial evidence, intent, parties to a crime, mere presence, and actual, constructive, and joint possession.